## In re BONER.

(District Court, N. D. West Virginia. April 30, 1909.)

1. BANKRUPTCY (§ 408*)—DISCHARGE—WITHHOLDING ASSETS.

Where a bankrupt, when he made a general assignment, several months before bankruptcy, turned over to the assignee property which the bankrupt believed to be sufficient to pay all his debts, it was no ground for refusing him a discharge that from 11 to 20 months prior to the filing of the petition he indulged in certain improvident transactions, and did not turn over to his assignee $1,000, rent of a farm owned by the bankrupt's father, which the bankrupt was permitted to receive as a gift from the father.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 408.*]

2. BANKRUPTCY (§ 177*)—PRIOR TRANSACTIONS—INSOLVENCY PROCEEDINGS.

The bankruptcy law does not attempt to supervise insolvency proceedings under state laws, undertaken and carried out more than four months prior to the institution of bankruptcy proceedings, nor to inquire into the assignments and transfers of the bankrupt's property not made within such period.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 177.*]

In Bankruptcy. On an application for a discharge.

D. B. Evans and E. D. Leach, for bankrupt.
Charles C. Newman, for creditors.

DAYTON, District Judge. In the early part of February, 1903, the bankrupt, a farmer in Marshall county, wholly inexperienced and clearly incompetent to engage in the mercantile business, purchased a stock of goods in Moundsville at the price of $6,000, half of which he paid in cash and for the balance he gave his notes. He carried on this business in the loosest and most reckless way for something like eight months, without proper books of accounts, and without apparently any reasonable idea of the condition of his affairs. Then on the 19th day of October of that year he made a general assignment of all his property to a trustee for the benefit of his creditors. It is shown by the record that his father was a man of large means, and prior to this time had allowed his son to control a farm, owned by the father, and receive its rents and profits, although title thereto remained in the father. It is shown, further, that the bankrupt's wife had and disposed of some property in her name. It seems that the trustee in this general assignment did not take possession of all the property so assigned to him; at least, he did not collect and take into possession the rents due from the farm above referred to, and so far as the record discloses no effort was made on the part of Boner's creditors to sequester or take into possession through a receiver or judicial proceeding the bankrupt's property. It may be assumed as pretty clearly shown that the bankrupt at this time supposed that he had ample assets to pay his debts and considerable over; that he turned over to the assignee what he confidently believed would be sufficient property to pay all his debts. Having done this in a spirit of either reckless despair or deliberate purpose, he started out on several months of

travel and dissipation, completely ignoring and absenting himself from his business, and apparently losing all interest in and what knowledge he had thereof. On the 3d day of September, 1904, nearly a year after, he filed his petition in bankruptcy, was adjudicated bankrupt, and his assets, as then scheduled by him, were duly administered. He applied for discharge within the year after adjudication, to which strenuous opposition has been made by creditors, and for various reasons the hearing of the same has been delayed until this time.

The substance of the specification of objections to the discharge are that he knowingly and fraudulently lost, disposed, and squandered in drunkenness and indulgence and in other vices large sums of money belonging to his estate, between the time when he purchased the stock of goods in February, 1903, and the 19th day of October, 1903, the day when he made his general assignment, and received during those periods of time various sums of money from parties which he did not account for and give over to the assignee in his deed of assignment; second, that while engaged in the mercantile business during these eight months he failed to keep books of account from which his financial condition might be ascertained; third, that he made, during such period of time, a materially false statement, in writing, to the Bradstreet Company, a commercial agency, as a basis of credit; fourth, that he concealed certain large sums of money, while he was so engaged in business, for the purpose of defrauding his creditors, and especially the sum of $1,000, the proceeds of the rent of the farm, and which he has not accounted for to said assignee in said assignment to his creditors. The application for discharge was referred to a referee, who has found that Boner is not entitled to it for a single reason, to wit, that he failed to turn over the $1,000 then in his possession to the assignee in the general assignment at the time it was made, and that his failure to do so was a concealment from the creditors as he was insolvent.

A thorough, careful consideration of all the evidence, facts, and circumstances involved in this matter convinces me that the finding of the referee cannot be upheld, and that this bankrupt is entitled to his discharge. As I have stated, I think the statement may be taken as true that the bankrupt, when he made this general assignment and afterwards, turned over to the assignee therein property which he believed to be amply sufficient to pay off all his debts. The $1,000 arising from the rent of the farm was his only by the sufferance and gift of his father, and he may very well have considered it no part of his estate. All the transactions complained of in the conduct of his business occurred between February and October, 1903, anywhere from 11 to 20 months prior to the filing of his petition in bankruptcy, and so far as disclosed by the testimony, while certainly the bulk of his property passed into the hands of his assignee under the general assignment, no proceeding has been instituted to secure from such assignee a settlement of his accounts as such. While the bankrupt was reckless, improvident, and utterly incompetent, apparently, to manage this mercantile business, I cannot believe that these transactions on his part were indulged in with any purpose of defrauding his

creditors, or, in anticipation of bankruptcy proceedings, to conceal his property.

It is to be borne in mind that the bankruptcy law does not undertake to inquire into the assignments and transfers of a man's property made more than four months prior to the institution of its proceeding. Nor does it attempt, nor can it attempt, to supervise the course and conduct of insolvency proceedings under state laws, undertaken and carried out more than four months prior to the institution of the bankruptcy proceeding. It may have been the plain duty of the assignee in the assignment to have followed and collected more closely the assets of Boner's estate assigned to him. It may have been the duty of the creditors so secured to have more closely attended to the collection of these assets, through the intervention of a state court and receiver, or by an application then in involuntary bankruptcy against their debtor; but as both have failed in this particular in their duty, and as Boner was permitted for a long period previous to control and dissipate a part of his estate, under the impression that enough had been turned over by him to satisfy his creditors, the fault between assignee, creditor, and debtor is at least mutual. So far as the record discloses, at the time that Boner filed his petition in bankruptcy, he concealed none of his assets that he then had; nor is it apparent that four months prior to that time he had fraudulently transferred or concealed any of his property.

Under the circumstances I think he is entitled to his discharge, and the order to that effect may be entered.